Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office for Mr. Benjamin, and I will do my best to reserve two minutes for rebuttal. Your Honors, when we look at the state record in this case, we see a veneer member who became a juror who said repeatedly, quite unequivocally, that he was biased from the outset against Mr. Benjamin and that he would vote to convict even if the prosecutor could not prove her case beyond a reasonable doubt. He also said that not everyone in the United States is entitled to the presumption of innocence. Both the prosecutor and the defense attorney thought member 8025 was unfit to serve as a juror. Both joined in a motion to dismiss him for cause. It's worth noting that the defense attorney was not shy about saying when he believed somebody was lying to get out of jury duty. He had said that about Mr. Donbo earlier. He said that about Ms. Alvarez-Bonillo at the same time number 8025 was being considered. Despite 8025's expression of actual bias, despite both attorneys joining in the motion to dismiss him for cause, the trial judge denied the motion based on a suspicion that possibly 8025 was lying. And the judge did not himself follow up with any kind of questions to 8025 to bear out this suspicion. Neither attorney did, and arguably the judge's instruction to them didn't allow them to do it, but in any case, nobody made a record to show that 8025, in fact, had the The best case scenario was that he had just perjured himself. The worst case scenario was that he held the views he said he held. No one made a record to show that he actually could be a fair juror. He never recanted his statements, and he ended up sitting on the jury in this case. Go ahead. So the judge made a finding, let's assume, that the juror was impartial, that he was just lying in order to get off the jury. And we have all these cases in Supreme Court cases that say, that talk about the deference we give to the judge's findings in that sort of context. What's different about this case, that we wouldn't be bound by those sorts of, that case law, particularly in this EDPA context? Well, I do think that we are in the category of 2254-D2. The deference is owed. But even under deferential review, we still ask, is this an unreasonable reading of the record? And certainly, we could say that it's reasonable for – I don't see it, but we could say it's reasonable for this trial judge to say maybe he's lying. But the trial judge has to do more than say maybe he's lying. Even if it's reasonable based on what the body language was, that perhaps he's lying, when you have a jury, a juror, that's expressed actual bias, the case law makes it clear that the judge, the onus is then on the judge, if they don't want to strike the person for their bias, to follow up. And the Dyer v. Calderon decision says to make findings and not assumptions. It would have been easy to call 802.5 into chambers and try to establish this, whether or not he was lying and whether or not he could be fair despite his sworn statements to the contrary. So while I do think it's a deferential standard of review, I think even under that deferential standard, in this case, it's unreasonable to say that this juror could be seated. So was the error the failure to follow up? Is that the theory? The error was to not grant the motion to dismiss for cause. And then to the extent the judge, well, I guess at that point, to not grant it or to say the other option would have been to say I'm calling him into chambers and I'm going to try to rehabilitate him, but since he didn't do that, then the error was to not dismiss this juror for cause. We have — I was struck by our decision. This was in direct review of Quintero-Varaza, where we similarly upheld that a juror had said he believed that someone is guilty before proven innocent and that it would be difficult for him to be impartial. And the judge said he's just trying to get off jury duty and didn't dismiss him. And we upheld that under this deference to court. Now, this was on direct review, but it certainly suggested that a court can reasonably say that's not unreasonable not to strike him. How do we distinguish Quintero-Varaza here? You know, Your Honor, I do apologize. I thought I surveyed every juror bias decision in the circuit, but I missed that one. To me, I mean, when you have a situation where, at the best, and I don't know if any follow-up was done in that case, but at the best, someone has said, you know, I'm biased against them, I'm going to vote to convict no matter what. You know, it is possible those people, that person is lying, but I would say that this circuit's precedent and Supreme Court precedent makes it clear that when a judge is confronted with a statement like that of bias, they have to find out, is it true? I mean, you can rehabilitate people. People have said sometimes in the beginning, I think I'd be biased, and then they tease it out a little bit through more voir dire, and it turns out they can set aside these feelings and they can enter and just decide the case based on the evidence presented. But obviously, that record was never made in this case. I just will touch briefly during this opening on the theory of ineffective assistance of counsel, and some of these topics came up in your last argument, but I would say that our theory on the substandard performance prong is that you can't, it's too, the defendant has a right to an impartial jury, and in this case where there's been no open knowing waiver of such a right, the attorney is required to do what they can to avoid seating of a biased jury. And here, obviously, there was no waiver of that right. As to prejudice, our argument is that the defense attorney's failure to use a preemptory strike created a structural error, and we cannot have confidence in a verdict when it's achieved with a biased jury, and so there's a structural error that meets the standard. With that, I'll reserve my two minutes. Thank you. Thank you. Good morning, Your Honors. My name is Ivan Mars, for the respondent. Petitioner has failed to show that he's entitled to habeas relief. In this case, Petitioner was a male. Could you move the microphone up there? Very good. Thanks. Under AEDPA review, Petitioner has failed to show that the California Supreme Court decision was contrary to or an unreasonable application of United States Supreme Court precedent. Because she has failed to show that neither of these two very narrow exceptions apply, then habeas relief is precluded. As United States Supreme Court has stated, the analysis is at end. It goes no further. In this case, there are reasonable explanations that justify the California Supreme Court's decision, most notably that the trial court in this case made a factual determination that the juror in question was, in fact, insincere in his comments of partiality. Because this is a reasonable explanation that's clear on the record of all the reasons that he came to that determination based on his demeanor, his tone of speech, his playing to the audience, picking up threads of comments from jurors that had been dismissed for cause before him. And that's a reasonable explanation. But, of course, at the end of the day, then, his finding is that the juror lied, which is also equally troubling in the juror bias context. It is equally troubling, Your Honor. I mean, that alone, in some circumstances, would be if you lie in answers to  And I don't know of any case in which the jury is so biased. I don't know of any United States Supreme Court precedent that hold that, that say No. I think the closer you get, and let me backtrack for a second to get the more, I think, relevant point. What troubles me a bit is if you take Smith, and I realize that Smith, there was a hearing. But Smith says the normal remedy when you suspect bias is to have a hearing. And here you have both the prosecutor and defense counsel challenge the juror for cause. And the judge says, I looked at the body language and I think he was just lying, trying to get off the jury. But there was no hearing. So why doesn't Smith compel the result that at least there should be a hearing before making the determination? Your Honor, I believe there actually already was a hearing. And that was the voir dire. The attorneys had had that opportunity to question this juror. They had asked him specifically a question and already made their determination. There was a hearing on it. And the trial court gave them the opportunity to continue the hearing, to have more of a hearing. But they both declined the extended hearings, meaning that I think it's fair to imply that they said, Well, we questioned him as much as we want. We've conducted our role in this hearing of voir dire. And we made our determination. And it's not unreasonable that they then agreed with the trial court's determination. They didn't agree with the trial court's determination. They both objected. And he overruled their objections. They heard the explanation. And the prosecutor made the original objection. The defense attorney kind of chimed in and jumped on and said, Yeah, I agree. I second that. But it's not unreasonable. So after the trial court said, Well, actually, this is why I think he is not being sincere in his comments, A, B, C, D. It's unreasonable that those attorneys said, Well, I actually could agree with that. They didn't say that. They didn't say that. But their actions imply it. No, no. I mean, you've made your objection. The Court has overruled. Why do you have to make any further objection? Because the Court denied the objection without prejudice, saying there's still an opportunity to get into this deeper if you wish. And neither of them took it up. I think that's implying that they don't necessarily disagree. Further, I think neither of them used a peremptory challenge. It also shows that they agreed that he wasn't a biased juror. And these weren't attorneys who were, so to speak, asleep at the wheel. They were actively shaping this jury, both of them, as far as conducting voir dire, asking for specific jurors to come back into chambers to specifically question them further, using peremptory challenges. Both of them were actively shaping this jury, and they made conscious, tactical decisions that juror number 8025 could sit as an impartial juror. What I find striking about this case is I don't think I've ever seen one similar, where a juror says, I am actually biased. And there's no rehabilitation of the juror. He's seated on the jury after declaring himself biased against the defendant. So you don't even have – and the only thing you have is a demeanor finding saying, no, he's not biased, he was lying, and I'm still going to seat the juror. I mean, I think that's kind of remarkable. I would agree, Your Honor. The cold words on the record, on this appellate record, are stark, the comments of the juror. However, I would point the Court to Irvin Vidal, the United States Supreme Court, and where they say that impartiality is not a technical conception, it is a state of mind. For ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular test and procedure is not chained to any ancient and artificial remedy. So, in fact, under the United States Supreme Court, there doesn't have to be necessarily more. The trial court made a factual determination, and as we've discussed before, both under 2254E1, statutory deference, and the United States Supreme Court case law deference in Patton v. Yapp, they say the trial court's factual determinations, given great difference, because they, the trial court, the attorneys, those are the people that are in the room that can hear the context of these words. You know, we're looking at this on a cold record, 10 years after these comments were made, many levels of review down the road. So, yes, on a stark record on this page, those words, I understand, are remarkable and can be seen troubling. But that's the very reason the United States Supreme Court has provided so much deference to the factual findings of trial courts. Well, what do you make of Dyer? In Dyer, we talked about the presumption not applying when the trial court doesn't conduct a further investigation and make findings. Now, I guess a couple of questions as you're answering this. One, do you think Dyer is, it's pre-AEDPA law, is it still good? And two, if it is good law, what are the consequences here? Your Honor, I would say Dyer is not necessarily applicable with all due respect to the precedence of this Court. It's not necessarily applicable to an AEDPA review. And Harrington v. Richter recently from the United States Supreme Court made it very clear that these exceptions are extremely narrow to a state court's decision adjudicated on the merits, and that if only in the most rare situations when no reasonable jurist could disagree as to the reasonableness of that decision based on the United States Supreme Court precedent, then only in those rare exceptions is there not a bar to federal relitigation of these state court claims. Right. But what Dyer was saying was if you don't, if there's no hearing, then we can't give deference to the finding. And I guess my question for you is, does that holding, is that holding inconsistent with AEDPA? Your Honor, I would say, again, going back, I would say there is a hearing here. There wasn't a specific hearing after the motion, but there was a full-blown voir dire conducted where both attorneys had the opportunity to individually question each juror. And, in fact, they took that opportunity. And so the fact that I don't think it's fair to say that there wasn't a hearing. The trial attorneys did not take the opportunity to continue the hearing when the trial court allowed them to do, but they did have an opportunity. And that's all that a hearing is based on, you know. Well, the only problem I have with your argument on that is that I don't see how that can be consistent with Smith, because in Smith there was a statement in Smith that the hearing is the remedy for juror bias. But the implicit, I guess, holding in Smith is that you've already had a voir dire happen in every case, and Smith seems to suggest that a further hearing is required. I don't think the – in reading Smith, I don't think the Supreme Court was saying voir dire is the hearing, or at least hearing within the meaning of Smith. But maybe I'm misinterpreting it. Well, I guess I just don't know what a hearing would have given the attorneys more of an opportunity to do than they have already had, in which neither of them thought that they needed more of an opportunity. And I think I would revert back to Irvin v. Dowd that also looked at juror impartiality as a much more general constitutional standard that specifically stated that there is not set requirements that need to be followed. The Constitution requires a fair trial, and part of that is an impartial jury. But there's not a series of steps that trial courts have to go through. I'm just confused about Smith. Now, in Smith, I thought that the information about the jurors' potential partiality came to light after the verdict. Is that incorrect? Am I misunderstanding that? That he had sought employment in the district attorney's office or in the prosecutor's office, and then that came to light after the fact? I'm trying to remember the facts, Your Honor. No, that's true. That's an accurate rendition, yeah. But here, all the information that he was stating that he couldn't be fair was at the trial. That's exactly right, Your Honor, and there is a distinction there. And unlike Smith, here, again, it's kind of a halfway point. And the judge said, this is my factual determination. I'm going to deny the cause as of now, but we can continue this. I'm denying without prejudice. We can continue this if you're so inclined. And obviously, that was not an opportunity in Smith. Okay. Further questions? No. Thank you. Thank you. Thank you, Your Honor. We have a little over two minutes. Thank you. Thank you very much. I'm just trying to look back to Smith myself because it's obviously of interest to the Court. And I believe in that case, someone who became a juror had not revealed the fact that he had submitted an employment application to the DA's office during voir dire, and it did come up afterwards. But there wasn't a statement by that person that they would definitely be biased. And I do believe Your Honor is correct that it bears going into a hearing and finding out if this person was biased. And in that case, they determined, although he had submitted that application to the DA's office, he could be a fair juror. But it certainly was something that had to be looked at on the record. Right. But I think the question on Smith that Judge Akuta was raising, if I'm interpreting your question correctly, is Smith involved a situation where there was a, that issue was raised post-trial and then they had a hearing. In this case, as the government argues, why isn't the voir dire a sufficient hearing given that the issue was raised or appeared during voir dire? Well, voir dire did reveal these statements that this person said, I'm very biased. So in that sense, I think voir dire effectively revealed that. The problem was that then the motion to dismiss for cause, which I think anyone would agree that if the statements are taken on their face, they give rise to dismissal for cause. But then the judge says, but I think he's lying. And there's never a hearing about, well, is he lying? Can he be fair despite these statements? That's never done. The judge did tell them they could ask 8025 about his views on drug usage. But that he had already lectured a different juror about how drug usage really wasn't even an issue in this case because it was about theft and possession of a precursor to manufacturing drugs. So I think that he didn't, I think the judge should have done it himself, certainly left it open to the attorneys, which he didn't do, for examination of is this guy in fact lying. And that was never done in this case. Other questions? No, thank you. Thank you both for your arguments. Again, another interesting question. And that is our last case on the oral argument calendar this morning. The case of Hunga v. Astor will be submitted on the briefs, and we will be in recess for the morning. Good morning.
judges: Thomas, Fisher, Ikuta